UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LORRAINE C. ESTRADA, | ) | No. EDCV 09-0071-RC |
| Plaintiff, | ) ) | |
| v. | ) ) | OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Lorraine C. Estrada filed a complaint on January 21, 2009, seeking review of the Commissioner's decision denying her applications for disability benefits. On June 9, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on July 27, 2009.

**BACKGROUND**

On July 6, 2006, plaintiff, who was born on July 21, 1964, applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program ("SSI") of Title XVI of the Act, claiming an inability to work

since May 16, 2006, due to stress, anxiety, depression and partial hearing loss.  Certified Administrative Record ("A.R.") 94-103, 111.  The plaintiff's applications were initially denied on November 1, 2006, and were denied again on July 20, 2007, following reconsideration.  A.R. 49-55, 58-62.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Jay E. Levine ("the ALJ") on August 26, 2008.  A.R. 21-44, 64.  On September 26, 2008, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 5-20.  The plaintiff appealed this decision to the Appeals Council, which denied review on November 10, 2008.  A.R. 1-4.

**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 552 U.S. 1141

(2008); Vasquez, 572 F.3d at 591.

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not,

in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[1] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since her alleged onset date of May 16, 2006. (Step One). The ALJ then found plaintiff has the severe impairments of: depression, drug and alcohol abuse, in remission per the [plaintiff], hearing loss, and

---

[1] First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

occasional vertigo" (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). Finally, the ALJ determined plaintiff is able to perform her past relevant work; therefore, she is not disabled. (Step Four).

**II**

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift)."). Here, the ALJ found plaintiff has the RFC to perform work at any exertional level, but not at unprotected heights, work requiring "acute hearing such as noises and sounds[,]" and "fast[-]paced work such as piece work or work that is done on a conveyor belt." A.R. 11. However, plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence because the ALJ improperly rejected the opinions of her treating psychiatrists, Visit Chatsuthiphan, M.D.,[2] and Maria Salanga, M.D.,

---

[2] The plaintiff was also examined by psychiatrist Linda M. Smith, M.D., who initially examined her on October 12, 2006, and diagnosed her with an adjustment disorder with mixed mood and determined plaintiff's Global Assessment of Functioning ("GAF") was 65, which indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000)). A.R. 182-88. Dr. Smith also found plaintiff "not altogether credible" and

and an examining audiologist, William W. Goral, M.D.

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick, 157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick, 157 F.3d at 725; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, "the ALJ may only reject . . . [an] examining physician's uncontradicted medical opinion based on 'clear and convincing reasons[,]'" Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another

---

"a fairly obvious positive responder" who "is probably not compliant with her medication." A.R. 182, 187. Dr. Smith did not find plaintiff has any "extreme," "marked" or "moderate" limitations and found she is "mildly" impaired in her ability to understand, remember or complete complex commands and in her ability to interact appropriately with supervisors, co-workers, or the public. A.R. 187. On April 17, 2007, Dr. Smith reexamined plaintiff and diagnosed her with an unspecified mood disorder and determined her GAF was 68. A.R. 252-58. Dr. Smith opined plaintiff "is possibly still noncompliant with her medication[,]" and again found no "extreme," "marked" or "moderate" limitations. A.R. 257-58.

1 doctor, the opinion of an examining doctor can be rejected only for
2 specific and legitimate reasons that are supported by substantial
3 evidence in the record." Regennitter v. Comm'r of the Soc. Sec.
4 Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Ryan, 528 F.3d at
5 1198.

**A.   Dr. Chatsuthiphan:**

On December 4, 2007, treating psychiatrist Dr. Chatsuthiphan evaluated plaintiff, noting her appearance, behavior, speech, perceptual process, thought process, thought content and memory were within normal limits, she was oriented to person, place, time and situation, her insight and judgment were good, but her mood was depressed; based on these findings, Dr. Chatsuthiphan diagnosed plaintiff as having a bipolar disorder and alcohol and amphetamine dependence and being depressed, and determined plaintiff's GAF was 42.[3]  A.R. 285-86, 298.  On December 18, 2007, Dr. Chatsuthiphan opined plaintiff has: an "extreme" limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and "marked" limitations in her ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals

---

[3] A GAF of 41-50 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

7

1 or make plans independently of others. A.R. 302-03. Dr.
2 Chatsuthiphan also opined plaintiff would miss three or more days of
3 work each month due to her condition. A.R. 303.

5     On August 13, 2008, Dr. Chatsuthiphan opined plaintiff has:
6 "extreme" limitations in her ability to remember locations and work-
7 like procedures, understand and remember very short and simple
8 instructions, maintain attention and concentration for extended
9 periods, perform activities within a schedule, maintain regular
10 attendance, and be punctual within customary tolerances, sustain an
11 ordinary routine without special supervision, work in coordination
12 with or in proximity to others without being distracted by them, make
13 simple work-related decisions, interact appropriately with the general
14 public, ask simple questions or request assistance, accept
15 instructions and respond appropriately to criticism from supervisors,
16 get along with co-workers or peers without distracting them or
17 exhibiting behavioral extremes, respond appropriately to changes in
18 the work setting, and set realistic goals or make plans independently
19 of others; a "marked" limitation in her ability to be aware of normal
20 hazards and take appropriate precautions; a "moderate" limitation in
21 her ability to maintain socially appropriate behavior and adhere to
22 basic standards of neatness and cleanliness; and a "slight" limitation
23 in her ability to carry out very short and simple instructions. A.R.
24 321, 323. Dr. Chatsuthiphan again opined plaintiff would miss three
25 or more days of work each month due to her condition. A.R. 303.

27     The ALJ considered Dr. Chatsuthiphan's opinions, which are
28 contradicted by the opinions of Dr. Smith, Tommasetti, 533 F.3d at

1041; Reddick, 157 F.3d at 725, and concluded they were entitled to "minimal weight" for several reasons, including their inconsistency with Dr. Chatsuthiphan's treating notes, which "support the finding that when the [plaintiff] takes her medication as prescribed, her condition is generally benign." A.R. 17. The ALJ's reasoning is supported by substantial evidence in the record, see A.R. 282-300, 307-20, and provides a specific and legitimate reason for rejecting Dr. Chatsuthiphan's opinions. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ also rejected Dr. Chatsuthiphan's opinions because they were "tendered without any supporting clinical or laboratory findings and [were] tendered on . . . check-box form[s] . . . [with] Dr. Chatsuthiphan [making] absolutely no comments on either form regarding why he rated the [plaintiff] so low." A.R. 17. This reason also is supported by substantial evidence in the record, A.R. 302-03, 321, 323, and constitutes a specific and legitimate reason for rejecting Dr. Chatsuthiphan's opinions. See Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physicians' opinions in part because they were in checklist form with no supporting objective evidence); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) ("ALJ . . . permissibly rejected [psychological evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions.").

**B. Dr. Salanga:**

On January 13, 2007, Dr. Salanga examined plaintiff and diagnosed

9

her as having a severe recurrent major depressive disorder without psychotic features and determined plaintiff's GAF was 48. A.R. 227-28. Dr. Salanga found plaintiff was oriented to person, place, time and situation and her appearance, speech, perceptual process, thought process and thought content were within normal limits; however, she was withdrawn, her mood was depressed, her memory was impaired, and her insight and judgment were poor. A.R. 228.

The ALJ considered Dr. Salanga's medical records and opinions in determining plaintiff's RFC. A.R. 13. Nevertheless, plaintiff complains the ALJ did not properly consider Dr. Salanga's GAF score. Jt. Stip. at 3:9-4:26, 7:22-8:6. The Court disagrees. An ALJ is not required to give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient. See, e.g., Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); Petree v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. 2007) (Unpublished Disposition) ("[A] low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."); Ramos v. Barnhart, 513 F. Supp. 2d 249, 261 (E.D. Pa. 2003) ("Clinicians use a GAF scale to identify an individuals' [sic] overall level of functioning, and a lower score 'may indicate problems that do not necessarily relate to the ability to hold a job.'" (citation omitted)).
//

1    Here, however, the ALJ did consider Dr. Salanga's GAF
2 determination, noting it was "not entitled to significant weight"
3 because "there is really no evidence to indicate the reliability of
4 cross raters where one can conclude a particular GAF score means a
5 particular limitation in work ability" despite "the DSM-IV gives some
6 descriptions that can be followed in defining a GAF score. . . ."
7 A.R. 18.  This is a specific and legitimate reason for rejecting Dr.
8 Salanga's GAF determination," Chavez v. Astrue, __ F. Supp. 2d __,
9 2009 WL 5172857, *6 (C.D. Cal.); see also Borrie v. Astrue, 2009 WL
10 2579497, *2 (C.D. Cal.) ("[T]he ALJ considered the GAF score, but
11 finding such scores unreliable, did not find it mandated disability.
12 This is a specific and legitimate reason for discounting the score.");
13 Taylor v. Astrue, 2009 WL 4349553, *5 (C.D. Cal.) (same), "and since
14 Dr. Salanga did not set forth any functional limitations or otherwise
15 comment on plaintiff's ability to work, the ALJ did not err." Chavez,
16 __ F. Supp. 2d at __, 2009 WL 5172857 at *6; see also Valentine, 574
17 F.3d at 691 (no error when ALJ considered evidence claimant contends
18 ALJ ignored).

20    **C.  Dr. Goral:**
21    On May 29, 2007, Dr. Goral examined plaintiff and diagnosed her
22 with "s[e]nsory hearing loss" in her left ear but no "[s]peech deficit
23 due to [the] hearing loss[,]" and found plaintiff has 96% speech
24 discrimination in her right ear and 92% speech discrimination in her
25 left ear.  A.R. 260-64.  Dr. Goral opined no treatment was recommended
26 for plaintiff, who "is not using hearing aids and none are necessary,
27 but she may prefer to try one in the left ear in the future."  A.R.
28 261.  Dr. Goral also opined plaintiff "can work in jobs requiring

11

acute hearing[,] . . . [and] needs to avoid jobs in which acute binaural hearing is necessary to avoid hazardous situations." Id.

The ALJ considered and adopted Dr. Goral's assessment, A.R. 13, finding plaintiff "cannot perform work that requires acute hearing such as noises and sounds." A.R. 11. Nevertheless, plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence because the ALJ omitted the word "binaural" from his RFC assessment. This argument is specious. If anything, the ALJ's RFC assessment is more favorable to plaintiff than Dr. Goral's opinions. Moreover, the ALJ's RFC assessment of plaintiff's hearing limitation inferentially applies to both ears. Thus, there is no merit to this claim either. Valentine, 574 F.3d at 691.

### III

The ALJ concluded plaintiff is able to perform her past relevant work as a telemarketer, based on plaintiff's RFC and the testimony of Vocational expert Troy Scott. However, plaintiff contends this Step Four determination is not supported by substantial evidence because the ALJ posed an incomplete hypothetical question to the vocational expert.

Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, Bray v. Astrue, 554 F.3d 1219, 1228 (9th Cir. 2009); Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002), and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Here, the ALJ asked the

vocational expert the following hypothetical question:

> Assume a hypothetical individual the claimant's age, education, prior work experience. Assume this person has no . . . exertional limitations, no work [at] unprotected heights, no work that requires acute hearing, and let me further define that by saying acute hearing meaning very light noises, very light sounds I should say. Normal speaking pattern would be okay, would not be precluded. And no, no fast[-]paced work such as piece work or conveyor belt. Would such a hypothetical individual perform claimant's past work [as a telemarketer]?

A.R. 41. The vocational expert responded "Yes." Id. However, plaintiff contends the ALJ's hypothetical question was incomplete because the ALJ did not include the limitations Drs. Chatsuthiphan, Salanga and Goral found.

Plaintiff's argument is without merit for the reasons discussed above. First, the ALJ's rejection of Dr. Chatsuthiphan's opinions is supported by substantial evidence; thus, the ALJ did not need to include Dr. Chatsuthiphan's limitations in his hypothetical question to the vocational expert. Rollins, 261 F.3d at 857; Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989). Second, Dr. Salanga did not find any functional limitations on plaintiff's work abilities and, in any event, the ALJ properly rejected Dr. Salanga's GAF score. Valentine, 574 F.3d at 691; Chavez, __ F. Supp. 2d at __, 2009 WL 517857 at *6. Third, the ALJ properly considered and adopted

1  Dr. Goral's hearing limitations.  See Roe v. Chater, 92 F.3d 672, 676
2  (8th Cir. 1996) ("While the hypothetical question must set forth all
3  the claimant's impairments, it need not use specific diagnostic or
4  symptomatic terms where other descriptive terms can adequately define
5  the claimant's impairments." (citation omitted)); Best v. Astrue, 580
6  F. Supp. 2d 975, 984 (C.D. Cal. 2008) (same).  Therefore, the
7  hypothetical question to the vocational expert was complete and the
8  vocational expert's testimony constitutes substantial evidence to
9  support the ALJ's Step Four determination that plaintiff can perform
10 her past relevant work.  Roberts, 66 F.3d at 184; Sanchez v. Sec. of
11 Health & Human Servs., 812 F.2d 509, 511 (9th Cir. 1987).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  April 14, 2010            /S/ ROSALYN M. CHAPMAN
                                 ROSALYN M. CHAPMAN
                                 UNITED STATES MAGISTRATE JUDGE

R&R-MDO\09-0071.mdo
4/14/10

14